UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MONICA PAJOR,<br><br>                 Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                 Defendant. | Case No. 22-cv-10438<br>Honorable Paul D. Borman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 14, 15)**

### I. Introduction

Plaintiff Monica Pajor appeals the final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 14; ECF No. 15. After review of the record, the Court **RECOMMENDS** that:

- Pajor's motion (ECF No. 13) be **DENIED**;
- the Commissioner's motion (ECF No. 16) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.    Background

### A.  Pajor's Background and Disability Application

Born in June 1986, Pajor was 33 years old when she applied for DIB and SSI in February 2020, with an alleged disability onset date of August 2016.  ECF No. 11-2, PageID.52, 68.  She had past relevant work as a cashier, customer service representative, and phlebotomist.  *Id.* at PageID.67-68.  Pajor claimed disability from lumbar degenerative disc disease, lumbar spinal stenosis and spondylosis, disc herniation and bulging, sciatica, osteoarthritis, attention-deficit hyperactivity disorder, lumbosacral radiculopathy, and sacroiliac joint dysfunction on the left side. ECF No. 11-3, PageID.116.

After a hearing, during which Pajor and a vocational expert (VE) testified, the ALJ found Pajor not disabled.  ECF No. 11-2, PageID.52, 69. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.* at PageID.40.  Pajor timely filed for judicial review.  ECF No. 1.

## B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c).

3

claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Pajor was not disabled. At the first step, she found that Pajor had not engaged in substantial gainful activity since the alleged onset date of August 17, 2016. ECF No. 11-2, PageID.54. At the second step, she found that Pajor had the severe impairments of lumbar osteoarthritis, degenerative disc disease, and stenosis, with disc herniation, annular tear, and radiculopathy; obesity; generalized anxiety disorder; and attention-deficit hyperactivity disorder. *Id.* at PageID.55. Next, the ALJ concluded that none of Pajor's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.* at PageID.56-57.

Between the third and fourth steps, the ALJ found that Pajor had the RFC to perform sedentary work,[2] except

---

[2] Sedentary work involves lifting or carrying no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; standing or walking for two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Regulation (SSR) 83-10.

4

> she is limited to: occasionally climb stairs, crouch, crawl, kneel, stoop, or bend; never climb ladders, ropes, or scaffolds; no work at unprotected heights or around dangerous moving machinery; and simple, routine work, defined as work that requires only simple decisions and no complex decisions, work that is not at a production-rate pace, and work that is low-stress, meaning it involves less than occasional changes in the work routine and setting.

*Id.* at PageID.57. At step four, the ALJ found that Pajor cannot perform any past relevant work. *Id.* at PageID.67-68. At the final step, after considering Pajor's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Pajor could perform, including positions as a sorter, final assembler, and document preparer. *Id.* at PageID.68-69.

### III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

5

> determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).  The substantial-evidence standard does not permit the Court to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Pajor argues that the Court should remand the decision because the ALJ (1) improperly evaluated the opinions of two treating physicians and (2) improperly discounted Pajor's subjective complaints.  ECF No. 14,

6

PageID.970-982.[4] The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

Pajor argues that the ALJ failed to give adequate weight to the opinions of treating neurosurgeons Andrey Volkov, D.O., and Syed Moosavi, M.D. ECF No. 14, PageID.973-980. ALJs must explain the persuasiveness of all opinions from both treating and non-treating sources by considering several factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(a).[5] "But the regulations only require ALJs to discuss the first two [factors]—supportability and consistency." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the more persuasive the medical opinion will be. §§ 404.1520c(c)(1), 416.920c(c)(1). An opinion that is more consistent with

---

[4] Pajor challenges the ALJ's evaluation of her physical impairments but not her mental impairments.

[5] Pajor cites caselaw applying the treating physician rule, which required ALJs to give controlling weight to well-supported opinions of treating sources. *See* ECF No. 14, PageID.972-973. But that rule does not apply here because Pajor applied for disability after March 27, 2017. *See Wolfe v. Comm'r of Soc. Sec.*, 16-13620, 2017 WL 6627044, at *7 n.4 (E.D. Mich. Nov. 26, 2017), *adopted*, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017).

the evidence from other medical sources and nonmedical sources is also more persuasive.  §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Volkov completed a work release in August 2016 stating that Pajor could not lift over ten pounds or perform prolonged bending and must be seated for work with 15-minute breaks every hour.  ECF No. 11-8, PageID.867.  In April 2017, Dr. Volkov recommended that Pajor avoid prolonged walking; lifting, pushing, or pulling more than ten to 15 pounds; and any twisting or bending.  ECF No. 11-7, PageID.407.  He also stated that her spinal conditions prevented her from performing her job as a phlebotomist.  *Id.*  And in May 2017, Dr. Volkov found that Pajor should minimize driving and should not twist; bend; lift, push, or pull more than five to ten pounds; or stand or sit for prolonged periods.  *Id.* at PageID.402.

Dr. Moosavi stated in August 2020 that Pajor could not bend at the waist, lift more than ten pounds, or sit more than 15 to 30 minutes.  *Id.* at PageID.742.  In October 2020, Dr. Moosavi made a similar recommendation, finding that Pajor could not lift more than five pounds or sit, stand, or walk for longer than 15 to 30 minutes.  ECF No. 11-8, PageID.937.  In both opinions, Dr. Moosavi noted the possibility of surgery.  *Id.*; ECF No. 11-7, PageID.743.

The ALJ found Dr. Volkov's opinions "partially persuasive" and Dr. Moosavi's opinions "less persuasive" for similar reasons. ECF No. 11-2, PageID.65-66. Since Dr. Volkov offered his opinions in 2016 and 2017, the ALJ reasoned that he did not consider Pajor's later "improved pain levels and reported progress towards her function goals" with conservative treatment. *Id.* at PageID.65. The ALJ also rejected Dr. Volkov's recommendation for 15-minute breaks every hour given Pajor's admission that she shopped for groceries for up to an hour every week. *Id.* at PageID.66. But the ALJ acknowledged that MRI findings supported Dr. Volkov's recommendation for sedentary work. *Id.* And the ALJ found that Dr. Moosavi's opinions conflicted with the record, including his own reports showing Pajor's stable condition on conservative treatment. *Id.* Thus, the ALJ addressed supportability and consistency, as required.

Substantial evidence supports the ALJ's reasoning. As the ALJ summarized, lumbar MRIs from August and September 2016 showed abnormalities including moderate to advanced osteoarthritis and degenerative disc disease with severe spondylosis and disc protrusions at L4-L5 and L5-S1 and central canal stenosis and facet hypertrophy at L5-S1. *Id.* at PageID.59 (citing ECF No. 11-7, PageID.419, 747-748; ECF No. 11-8, PageID.870-871). Yet Dr. Volkov's and Dr. Moosavi's physical

examinations showed that Pajor had normal gait and station; range of motion in her spine and extremities; muscle tone, strength, and stability in her spine and extremities; reflexes; and sensation. ECF No. 11-7, PageID.418, 612-613. Dr. Moosavi only noted some paraspinal muscle tenderness. *Id.* at PageID.612. Both doctors recommended conservative treatment with medication, spinal injections, a lumbar brace, and physical therapy. *Id.* at PageID.419-420, 614.

A February 2017 MRI again showed progressive degenerative disc disease at L4-L5 and L5-S1, with moderate spinal stenosis and a large central disc component and herniation. *Id.* at PageID.407. During a physical examination in March 2017, Pajor had tenderness in her left lumbar spine and a positive straight leg raise. *Id.* at PageID.651. But John Santa-Ana, D.O., noted she could stand without difficulty and had normal stability, strength, and tone in her paraspinal muscles and normal strength, motor function, and reflexes in her extremities. *Id.* Dr. Santa-Ana did not alter her treatment. *Id.* at PageID.651-652.

Explaining that conservative treatments failed, Dr. Volkov recommended spinal surgery in May 2017. *Id.* at PageID.402. But Dr. Volkov cancelled the surgery because he determined Pajor was not a candidate after reviewing her MRI. ECF No. 11-2, PageID.87-88. The ALJ

observed that "contemporaneous treatment notes from Dr. Moosavi reflect the claimant's lumbar condition was stable in mid- to late 2017." *Id.* at PageID.60.  Those records show that Pajor rated her low back pain at 7 to 9 out of 10.  ECF No. 11-7, PageID.528. 533.  Yet she also reported 70% relief in her pain and improvements in physical functioning and quality of life with the prescribed medications, stating that the pain relief made "a real difference in her life."  *Id.* at PageID.528.  Physical examination findings were unchanged from March 2017, and Dr. Moosavi continued the same conservative treatment.  *Id.* at PageID.528, 531, 536-537.

     Dr. Moosavi's treatment records reflect that Pajor's condition remained stable through December 2019.  Pajor reported 40 to 70% relief in pain with treatment, and she consistently reported improvements in function and quality of life.  *Id.* at PageID.543, 554, 559, 564, 570, 575, 581, 591, 597.  Pajor also felt she was "progressing toward the stated pain and function goals."  *Id.* at PageID.559, 564, 570, 575, 581, 591, 597.  Physical examination findings included tenderness in the left lumbar spine, a positive straight leg raise, and positive facet loading.  *Id.* at PageID.528, 557, 562, 567, 573, 578, 584, 594, 600-601.  But Pajor could stand without difficulty and had normal stability, strength, and tone in her paraspinal muscles and normal strength, motor function, reflexes, and sensation in her

extremities. *Id.* Dr. Moosavi continued the same conservative treatment. *Id.* at PageID.547, 558, 563, 568, 574, 579, 585, 595, 601.

In early 2020, Pajor complained of worsening low back pain that interfered with her functioning and daily activities. *Id.* at PageID.693, 708, 780, 785. But she still reported 50% relief in pain and progression toward pain and function goals through September 2020. *Id.* at PageID.693, 696-697, 708, 780, 785. And Pajor declined Dr. Moosavi's suggestion of a spinal cord stimulator, stating that she did not want to have surgery. *Id.* at PageID.698, 711, 783, 788. Pajor continued conservative treatment for the rest of 2020. *Id.*; *see also* ECF No. 11-8, PageID.810-811, 815, 819, 824, 829-830, 931. Given Pajor's reports of pain relief and her refusal to try a spinal cord stimulator, the ALJ reasonably concluded "that her medication regime has continued to give her adequate relief." *Id.* at PageID.61.

Pajor emphasizes her complaints of pain and that treatment provided no functional improvements. ECF No. 14, PageID.975-976, 978 (citing ECF No. 11-7, PageID.424, 780, 785). The ALJ addressed those complaints but found they conflicted with physical examination findings and Pajor's reported pain relief, as explained above. Pajor also challenges the ALJ's reasoning that treatment remained conservative, noting that Dr. Moosavi stated in August 2020 that she would likely require surgery. *Id.* at

PageID.979 (citing ECF No. 11-7, PageID.742). But Dr. Moosavi never did recommend surgery; records from August 2020 show that he continued Pajor's conservative treatment since she declined the spinal cord stimulator. ECF No. 11-7, PageID.783-784. And when, as here, the ALJ's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

Pajor next argues that the ALJ improperly concluded that Dr. Moosavi's treatment records did not support his opinions, as "a treating physician is in a better position to interpret his own medical records than the ALJ." ECF No. 14, PageID.978-979 (citing *Ferguson v. Scheiker*, 765 F.2d 31, 37 (3d Cir. 1985)) (cleaned up). But the treating physician rule does not apply to Pajor's application, so Dr. Moosavi's opinions were not entitled to a presumption of controlling weight. And since the records discussed above support the ALJ's rationale, this is "hardly a case where the ALJ rejected a medical opinion without any basis." *See Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015).

Last, Pajor disputes the ALJ's finding that Dr. Volkov's recommendation for 15-minute breaks every hour conflicted with Pajor's

13

admission that she shopped for groceries for up to an hour each week. ECF No. 14, PageID.976-977.  During the hearing, Pajor testified that she did minimal grocery shopping and instead used curbside pickup.  ECF No. 11-2, PageID.93.  But the ALJ correctly noted that Pajor admitted in her function report that she grocery shopped once a week for up to an hour, with no mention of curbside pickup.  ECF No. 11-6, PageID.391.  Thus, substantial evidence supports that ALJ's rationale.

## C.

Pajor also contends that the RFC is not supported by substantial evidence because the ALJ improperly discounted her subjective complaints.  ECF No. 14, PageID.980.  She disputes the ALJ's finding that her subjective complaints were inconsistent with her reported activities, based on (1) her inconsistent statements about grocery shopping and (2) her overstated weight gain.  *Id.* at PageID.981-982.

An ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).[6]  At the same time, "such determinations must find support in the

---

[6] SSR 16-3p eliminated use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character."  *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018

record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). An ALJ must explain the bases of her subjective symptom evaluation determination, and the reviewing court should not be left to speculate about the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "Blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248 (cleaned up).

The ALJ found that Pajor "described daily activities that are not limited to the extent one would expect given the functional deficits alleged by the complainant, which is inconsistent with her statements concerning the intensity, persistence and limiting effects of her symptoms." ECF No. 11-2, PageID.64. The ALJ cited Pajor's inconsistent statements about grocery shopping and her weight gain from 2016 to 2020. *Id.* The ALJ concluded that "the fact that the claimant overstated her weight gain to

---

WL 494523 (S.D. Ohio Jan. 22, 2018). Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight. *See, e.g.*, *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018).

15

medical providers in late 2020 begs the question, did the claimant overstate any other symptoms or limitations?" *Id.* (cleaned up).

As discussed above, the ALJ did not err by finding that Pajor made inconsistent statements about her grocery shopping, as she claimed in her function report that she shopped for up to an hour each week. Nor did the ALJ err by finding that Pajor made inconsistent statements about her weight gain. During the hearing, Pajor reported a weight gain of 80 to 100 pounds, claiming she weighed 130 to 140 pounds in 2016 and 220 to 230 pounds at the hearing. ECF No. 11-2, PageID.87. In November 2020, Pajor told her psychiatrist that she gained 100 pounds over the last five years. ECF No. 11-8, PageID.952. But the records show that Pajor was 125 pounds in August 2016 and 190 pounds in November 2020, a weight gain of only 65 pounds. ECF No. 11-7, PageID.418; ECF No. 11-8, PageID.930. Since substantial evidence shows that Pajor overstated her weight gain, the ALJ did not err in discounting the weight given to her testimony about her subjective symptoms.

## IV. Conclusion

The Court **RECOMMENDS** that Pajor's motion for summary judgment (ECF No. 14) be **DENIED**, the Commissioner's motion for summary

judgment (ECF No. 15) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: February 1, 2023

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the

17

objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 1, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
